TOMAN et, Plaintiffs-Appellants v. PENNSYLVANIA RAILROAD CO., Defendant-Appellee.

Ohio Appeals, Second District, Darke County.

No. 610. Decided April 26, 1943.

T. A. Billingsley, Greenville, and Kerr & Kerr, Troy, for plaintiffs-Appellants.

Baird Broomhall, Troy, for defendant-appellee.

34

By HORNBECK, J.

This is an appeal on questions of law from a judgment of the Common Pleas Court dismissing plaintiffs' petition based upon a finding of the trial judge, a jury having been waived by the parties.

The errors assigned are:

1. That the judgment of the trial court was contrary to the weight of the evidence in the case.

2. That under the undisputed facts, appellants—as a matter of law—were entitled to a verdict.

3. That the failure of the common carrier to comply with the Regulations of the Bureau of Animal Industry created a liability in favor of the appellants.

4. That under the conceded facts, the carrier having discovered the presence of cholera in the shipment of hogs within a few hours after the place of loading, a common-law duty devolved upon the carrier to promptly notify the consignees of this condition so that consignees could protect themselves; and the failure to perform this duty, by the carrier, created a legal liability in favor of appellants.

The plaintiffs in their petition plead and the admissions of the answer or the evidence establish the following facts:

1. That the Tremont and Gulf R. R. Co., a common carrier, accepted a shipment of 359 head of hogs to be delivered to Gettysburg, Darke County, Ohio, by the defendant company.

2. That the consignment of the shipment was made at Winnfield, La., of date Apr. 15, 1936.

3. That the consignor was Martin, Blomquist and Lee Commission Co. of Kansas City, Missouri, and the consignee was Martin, Blomquist and Lee, c/o William Toman, destination Gettysburg, Ohio.

4. That on Apr. 15, 1936, the hogs were placed in the stock yards of the Tremont and Gulf Railroad Company and thereafter loaded in two cars of said company and delivered by it through carriers to the defendant company who conveyed the same to Gettysburg, Darke County, Ohio.

5. That there was an issue whether at the time of the delivery to the stock yards of the railroad company in Winnfield, La., the hogs were in good, healthy condition.

6. That the two stock cars in which the hogs were loaded at Winnfield, La., had been cleaned but not disinfected before the hogs were placed in them.

7. That there was an issue whether the failure to disinfect said stock cars in which the hogs were loaded was a violation of Section 4, Order No. 309 of the Bureau of Animal Industry of the Federal Government known as Quarantine Circular No. 5-G effective Apr. 15, 1936.

8. That on Apr. 16, 1936, at Biddle, Ark., the cars in which the hogs were shipped were stopped for the purpose of watering and feeding the hogs and at that time there were found three dead hogs in one car and one dead hog in the other at which time the carrier acquired information that the hogs were infected with a contagious disease.

9. That the carrier did not notify the shipper nor the plaintiffs of the information which it had received at the time that the hogs were watered and fed at Biddle, Ark., but continued said shipment to Gettysburg, Darke Co., Ohio, where it arrived Apr. 19, 1936, at which time there were sixteen dead hogs in the cars.

10. That these hogs died of cholera and upon the arrival of the shipment at Gettysburg the hogs were taken to the farm of the plaintiffs on Sunday, Apr. 19, 1936, and inspected and treated by a competent veterinarian and on the morning of Apr. 20th the hogs were immunized but, notwithstanding, 219 of the hogs died of cholera before those living were sold on dates between Aug. 19th and Oct. 12th, 1936.

The petition pleads a set of facts which discloses that plaintiffs were relying in part, at least, upon the claimed negligence per se of the defendant company in its violation of Section 4, Order No. 309. The petition further states the fact respecting the watering and feeding of the hogs at Biddle, Ark., and the discovery that they were infected with a contagious disease and that notwithstanding this knowledge, the company continued its shipment to Gettysburg, Darke Co., Ohio. There is no averment in the petition of the specific duty which it is claimed defendant failed to observe in continuing its shipment to Gettysburg after the inspection of the hogs at Biddle, Ark. However, it is urged in the briefs of counsel for appellants that the company was negligent in that it did not notify the shipper of the condition of the hogs so that it might have been given the opportunity to issue instructions as to what should be done with the hogs.

Upon the record and the pleadings, the controlling questions are of law, namely; did the plaintiffs have a right of action against the defendant and, if so, if they have established their cause of action against it. The trial judge in a written opinion with which we have been favored found that, if the defendant company had violated the order of the Bureau of Animal Industry of the Federal Government in failing to disinfect its cars before loading the hogs into them, such negligence could not have been a proximate cause of the disease with which the hogs suffered and of which they died. This conclusion is clearly in accord with the facts developed because all of the experts who testified said that the disease could not have been contracted by reason of the condition of the stock cars in which the hogs were loaded because the cholera developed too soon after the date of

shipment to permit of the incubation period always attending the development of cholera.

The major and controlling proposition in this case arises because the plaintiffs at the time the cause of action, if any, arose were not the owners of the hogs having purchased them after the shipment had arrived at Gettysburg. Neither were they the consignors nor the consignees.

The action though sounding in tort grew out of the contract rights between the shipper and the defendant to which the plaintiffs were not parties. Thus there was no privity of contract between the plaintiffs and the defendant which conclusion was reached by the trial judge. The duty owing from the defendant moved to the party with which they contracted, namely Martin, Blomquist and Lee, who was both consignor and consignee. The cause of action, if any, arose at the time the hogs were in transit and in favor of the commission company. There is no claim of the assignment of this cause of action to the plaintiffs.

"A plaintiff in an action for negligence, who bases his suit upon the theory of a duty owed to him by the defendant as a result of a contract must be a party or privy to the contract; otherwise he fails to establish a duty toward himself on the part of the defendant, and fails to show any wrong done to himself." 38 Am. Jur., 662.

There are some phases of this case to which we direct attention which the trial judge did not mention in his opinion but which are material upon the question whether or not the judgment should be affirmed.

It is established that the cars in which the hogs were loaded at Winnfield, La., were not disinfected. As we read Section 4 of Quarantine Circular No. 5-G, the failure to disinfect, in and of itself, is not a violation of the terms of the section. To constitute a violation, it must further appear that the cars into which the livestock is to be loaded had been used "in the interstate transportation of cattle, sheep, swine, poultry or other animals infected with or carrying the infections of any contagious, infectious, or communicable disease." There is no showing that such cars had been so used.

It further appears by the deposition of Mr. O. Trahan, traffic manager of the Tremont and Gulf Railroad Company upon the tracks of which the cars in question were originally placed, that it is the practice and the custom of railroad carriers in compliance with the rule of the Department of Agriculture of the United States Government, where cars carry animals suffering from infectious or contagious disease, for the railroad at the point of final destination to disinfect such cars before again placing them in service and that, therefore, the carrier at the point of shipment in the instant case

had a right to rely upon the assumption that, if the cars in question had carried infected animals, they would have been disinfected before received at the point of original shipment. These undisputed facts in the light of the terms of Section 4 of the Quarantine Circular No. 5 are convincing, almost to a point of certainty, that there was no violation of the order.

If, upon any hypothesis, the plaintiffs could be held to have the capacity to maintain the action sued upon here, then their rights having come from Martin, Blomquist and Lee Commission Co. would rise no higher than those of that company. The question then becomes important of the right of the Commission Company to assert the claimed negligence of the carrier in the failure to notify the consignee of the condition of the hogs at Biddle, Ark. An examination of the undisputed testimony offered by the defendants by way of depositions of sundry witnesses is convincing that Mr. McDonald, agent of Martin, Blomquist and Lee, knew, or should have known, that the hogs at the time they were loaded were infected with cholera. He made no request whatever that the cars be disinfected. On the contrary, it is evident that he did not desire that they be disinfected, although, he requested the agent at the point of shipment to state that it had been done. It is significant that, as an incident to the shipment, the notation was made of a "Permit by Western Union from F. G. Zermmer, State Vet., Columbus, Ohio, Hogs to be treated after arrival." As a part of this statement, the shipper was also instructed "to not unload in transit." It, therefore, must be concluded that McDonald acting for the consignor knew just what the instruction to the shipper "not to unload in transit" meant and that it was made with knowledge that in probability the disease with which the hogs were suffering would further develop in transit. This precludes any determination of dereliction on the part of the carrier in the failure to notify the consignee of a condition as to which it was already entirely conversant. If, upon the most favorable view of the facts as developed, it could be found that the defendant was negligent and that such negligence was a proximate cause of the loss of the hogs, it conclusively appears that the consignor through its agent would be chargeable with negligence contributing proximately to the loss of the hogs.

We recognize that the plaintiffs may have suffered considerable money damage by reason of the transaction involved in this case and if no adjustment whatever has been made with them, it is unfortunate that they may not recover, but a careful examination of the record in the light of the law controlling is convincing that no error prejudicial to their rights has intervened in the entering of the judgment and that it must be affirmed.

BARNES, P. J., and GEIGER, J., concur.