OPINION
{¶ 1} Plaintiff-appellants John Doe III, Jane Doe, and John Doe I (hereinafter "Appellants"), appeal from a decision of the Montgomery County Court of Common Pleas, which sustained the motion for summary judgment of defendant-appellee Choices, Inc., filed under seal on June 30, 2005. Appellants filed a timely notice of appeal on November 3, 2005.
 {¶ 2} Defendant cross-appellant Lisa Frisco appeals from that portion of the trial court's decision overruling in part her motion for summary judgment filed on July 6, 2005. The judgment both parties appeal from was filed by the trial court on October 21, 2005.
 I {¶ 3} In February of 2001, defendant-appellee Montgomery County Children Services Board (hereinafter "MCCS") was granted permanent custody of John Doe II after it was found that he had been neglected and abandoned by his biological parents. The record reveals that John Doe II had been placed at several foster homes and had just been removed from his most recent foster placement after the foster parent accused him of lying and stealing.
 {¶ 4} In early March of 2001, MCCS entered into a contract with Choices, a private agency that recommends foster placement for juveniles, to provide a foster home for John Doe II. Because John Doe II's biological brother was already residing with the Friscos pursuant to foster care placement and the brothers both expressed a desire to be reunited, Choices, in conjunction with MCCS, arranged to have John Doe II placed with the Friscos. Thus, on March 9, 2001, the Friscos entered into an "individual child care agreement" with MCCS to provide for the basic and special needs of John Doe II. However, MCCS remained the permanent custodian of John Doe II and retained the authority to supervise his case management. At no time was Choices granted permanent, temporary, or legal custody of John Doe II.
 {¶ 5} Under its agreement with MCCS, Choices was required to visit the Frisco home 2-4 times a month in order to monitor John Doe II's emotional, medical, educational, and social behavior. Choices would then report its findings to MCCS along with recommendations concerning his progress in those areas. As the permanent custodian of John Doe II, MCCS would then make the appropritate decisions regarding his care.
 {¶ 6} As part of the initial placement process with the Friscos, MCCS sent Choices a file on John Doe II containing any information regarding behavioral problems he had exhibited while in the care of other foster families. The file stated that the accused had engaged in stealing and starting fires. John Doe II was known to be learning disabled. Moreover, the file stated that John Doe II also exhibited a feminine affect and suffered from gender identity disorder. Noticeably absent from the file on John Doe II, however, was any mention of sexual acting out or molesting other children. Even after John Doe II was placed at the Frisco residence, MCCS never provided Choices with any records indicating any deviant sexual behavior.
 {¶ 7} During the time of John Doe II's placement, the Frisco home consisted of Lisa Frisco, her husband, Marvin Frisco, and their seven adoptive and foster children. Additionally, Lisa Frisco provided babysitting services for various children around their neighborhood, including the victim and his younger brother.
 {¶ 8} Prior to the incident which forms the basis of this appeal, Choices became aware of only one negative occurrence involving John Doe II and one of the children in the Frisco household. In March of 2001, Lisa Frisco reported to Choices that John Doe II had pulled down the pants of D.F., one of the Friscos' adopted children. However, all parties involved understood the boys to be engaging in horseplay, and the incident was not regarded by anyone as sexual in nature.
 {¶ 9} On November 12, 2001, Lisa Frisco was babysitting her adopted son, D.F., her adopted daughter, L.F., and the victim. At approximately 3:30 p.m., Lisa Frisco left the residence to run an errand. She left her thirteen year-old daughter, L.F., to watch over the two young boys while she was away. When Lisa Frisco left the house, she believed that John Doe II was not going to return home until after she returned because he was supposed to be in detention at school. While she was gone, however, John Doe II arrived home early and allegedly persuaded the victim to perform oral sex upon him.
 {¶ 10} On November 14, 2001, Lisa Frisco became aware of the incident involving John Doe II and contacted Choices, as well as the parents of the victim, and informed them as to what had allegedly occurred. Choices removed John Doe II from the Frisco home on the same day. Choices subsequently investigated the circumstances surrounding the incident, and Lisa Frisco was found to be in noncompliance with O.A.C. section 5101:2-7(K), for failing to provide adequate supervision of the children in her care.
 {¶ 11} On March 3, 2004, the appellants filed a complaint alleging numerous causes of action against MCCS, Choices, and Lisa Frisco including negligence, negligent infliction of emotional distress, intentional tort, intentional infliction of emotional distress, and loss of services. MCCS filed its motion for summary judgment on June 10, 2005. Choices followed suit and filed its motion for summary judgment on June 30, 2005. On July 6, 2005, Lisa Frisco filed her motion for summary judgment. The trial court rendered its decision on October 21, 2005, sustaining MCCS's and Choices' motions for summary judgment in their entirety, and sustaining in part and overruling in part Lisa Frisco's motion.
 {¶ 12} On appeal, the appellants contest the decision of the trial court granting summary judgment only as it pertains to Choices. They did not include MCCS as a party to this appeal. As previously noted, Lisa Frisco filed a cross-appeal from that portion of the trial court's decision overruling in part her motion for summary judgment.
 II {¶ 13} An appellate court reviews an award of summary judgment de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105, 671 N.E.2d 241. We apply the same standard as the trial court, viewing the facts in the case in a light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co.
(1983), 13 Ohio App.3d 7, 12, 467 N.E.2d 1378.
 {¶ 14} Pursuant to Civil Rule 56(C), summary judgment is proper if:
 {¶ 15} "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 364 N.E.2d 267. To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The non-moving party must then present evidence that some issue of material fact remains for the trial court to resolve. Id.
 III {¶ 16} The appellants' first assignment of error is as follows:
 {¶ 17} "THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEE CHOICES SINCE APPELLEE CHOICES BREACHED ITS CONTRACTUAL AND LEGAL DUTIES OWED TO JOHN DOE II, AS WELL AS ITS DUTY TO CONTROL HIM PURSUANT TO THE SPECIAL RELATIONSHIP THAT EXISTED."
 {¶ 18} In their first assignment, the appellants contend that the trial court erred when it sustained Choices' motion for summary judgment because Choices breached a "tripartite duty" owed to John Doe II, which, in turn, was the proximate cause of the injury suffered by the victim. Appellants assert that Choices' tripartite duty to John Doe II is created by: 1) its contract with MCCS regarding the foster placement of John Doe II; 2) O.A.C. § 5101:2-47-18, which imposes a duty upon Choices to properly place John Doe II in an appropriate foster home based on his special needs; and 3) the "special relationship" that existed between Choices and John Doe II, which created a duty for Choices to control the actions of the accused.
 {¶ 19} "As a general rule, if a plaintiff brings an action sounding in tort and bases his claim upon a theory of duty owed by a defendant as a result of contractual relations, he must be a party or privy to the contract in order to prevail." Vistein v.Keeney (1990), 71 Ohio App.3d 92, 106, 593 N.E.2d 52, citingPoteet v. Rudy (July 14, 1980), Montgomery App. No. 6681. This Court has held that if the plaintiff fails to demonstrate that he is a party to a contract, or in privity with a party, he fails to establish the existence of a duty owed to him by the defendant.Toman v. Pennsylvania R. Co. (1943), 39 Ohio Law Abs. 32, 51 N.E.2d 231.
 {¶ 20} It is clear that appellants were not parties nor were they privy to the contract between Choices and MCCS regarding the placement of John Doe II in the Friscos' residence. Thus, appellants cannot establish the existence of a duty in order to hold Choices liable for negligence based on the contract.
 {¶ 21} Moreover, the actual contract between Choices and MCCS does not contain any provision that requires Choices to supervise or control John Doe II. The contract merely provides for the placement of John Doe II in the Friscos' home and the monitoring of the child while in the home. The contract does not state that Choices is in control of John Doe II, nor does it transfer permanent custody of John Doe II away from MCCS. There is nothing in the contract that creates a special duty to John Doe II on the part of Choices.
 {¶ 22} Additionally, O.A.C. § 5101:2-47-18, entitled "Foster Care Maintenance Program Reimbursability: payments related to the difficulty of care needs of a child placed in a foster home, relative home, or pre-finalized adoptive home," simply determines when a foster parent is entitled to additional compensation for the care of a child. The code section relied upon by appellants does not create any special duty on a private foster placement agency, such as Choices. Appellants' reliance on this section of the O.A.C. is clearly misplaced.
 {¶ 23} Lastly, appellants argue that a "special relationship" existed between Choices and John Doe II, which created a duty for Choices to control the actions of John Doe II. The existence of a duty is an essential element in a cause of action alleging negligence. Strother v. Hutchinson (1981), 67 Ohio St.2d 282,285, 423 N.E.2d 467. There is no set formula for ascertaining whether a duty exists. Mussivand v. David (1989),45 Ohio St.3d 314, 318, 544 N.E.2d 265. While the scope and extent of a duty is a question of fact, the existence of such a duty is ordinarily a question of law. Id. Duty "is the court's expression of the sum total of those considerations of policy which lead the law to say that a particular plaintiff is entitled to protection." Id,
quoting Prosser, Law of Torts (4 Ed. 1971) 325-326.
 {¶ 24} To establish actionable negligence, a plaintiff must show the existence of a duty, a breach of the duty, and an injury resulting from the breach. Menifee v. Ohio Welding Products,Inc. (1984), 15 Ohio St.3d 75, 77, 472 N.E.2d 707, 710. In order to defeat a motion for summary judgment in a negligence action, the plaintiff must identify a duty owed him by the defendant.Keister v. Park Centre Lanes (1981), 3 Ohio App.3d 19,443 N.E.2d 532. Usually, a duty exists when the injury to one in the plaintiff's position is foreseeable. This occurs when the injured person comes within the circle of those to whom injury may be reasonably anticipated. Byers v. Hubbard (1995),107 Ohio App.3d 677, 669 N.E.2d 320. Once a duty is shown to have existed, a breach of that duty must be the proximate cause of the plaintiff's injury. Id. However, a person is not liable for proximately causing an injury if, under the totality of the circumstances, he did not foresee and, acting as a reasonably prudent person, could not have foreseen the consequences of his alleged negligent acts. Jeffers v. Olexo (1989),43 Ohio St.3d 140, 142, 539 N.E.2d 614, syllabus.
 {¶ 25} "Ordinarily, there is no duty to control the conduct of a third person by preventing him or her from causing harm to another, except in cases where there exists a special relationship between the actor and third person which gives rise to a duty to control or between the actor and another which gives the other the right to protection. * * * The special relationships which may give rise to a duty to control the conduct of another person may be between the defendant and either the person whose conduct needs to be controlled or the injured plaintiff, the foreseeable victim." Fed. Steel Wire Corp. v.Ruhlin Constr. Co. (1989), 45 Ohio St.3d 171, 173-174,543 N.E.2d 769. Therefore, to find liability in negligence requires the determination of a special duty owed by a particular defendant. Id., citing Hill v. Sonitrol of Southwestern Ohio,Inc. (1988), 36 Ohio St.3d 36, 38, 521 N.E.2d 780.
 {¶ 26} In the instant case, appellants argue that Choices had a special duty to control John Doe II via case management of his foster placement at the Frisco residence to insure that he did not harm the other children in the home. While it is true that Choices was charged with the responsibility of monitoring the accused's psychological, medical, educational, and social progress, at no time did Choices assume permanent, temporary, or legal custody of the child.
 {¶ 27} It should be noted that prior to the time of the molestation, John Doe II had not exhibited any behavior that identified him as a risk to sexually offend other children in the Frisco residence. When Choices placed John Doe II in the Frisco home, the agency was unaware that the child suffered from any significant psychological problems. The appellants admit that MCCS did not provide Choices with a complete behavioral history of John Doe II. The information that Choices did receive from MCCS on John Doe II demonstrated that he had a history of minor criminal activity, a learning disability, and gender identity disorder. There was no information provided to Choices to suggest that John Doe II was a sexual predator or in danger of becoming one.
 {¶ 28} However, the appellants argue that in light of the incident that occurred in March of 2001 when John Doe II pulled down D.F.'s pants, Choices was on notice that John Doe II was in desperate need of psychological counseling and intervention. Moreover, the appellants conclude that it was foreseeable from this point that John Doe II would harm one of the other children in the Frisco home. As stated previously, however, neither Choices nor the Friscos viewed the incident as sexual in nature, nor would the conduct itself suggest it was anything more than just simple horseplay. After the event, John Doe II disclosed to Lisa Frisco that he had been sexually abused by a former foster parent, and she properly notified Choices, who then attempted to arrange for assessment and counseling for the accused. MCCS chose not to act.
 {¶ 29} However, Choices was not "in charge" of John Doe II and had no ability to control him. Choices merely made recommendations to MCCS, John Doe II's permanent custodian, with respect to his need for psychological care and counseling. After it was discovered by Choices that John Doe II had been sexually abused and forced to dress up in women's clothes, the agency recommended that the child receive the proper psychological assessment and counseling to assist him in dealing with the incident. Choices informed MCCS of John Doe II's need for counseling, but MCCS was unwilling to pay for the assessment and subsequent counseling. Clearly, if Choices was "in charge" of John Doe II as appellants suggest, Choices would not have to secure authorization from the County before obtaining the necessary treatment for the child. Additionally, until the events of November 12, 2001, Choices had no information before it concerning John Doe II whereby it could foresee that he would sexually abuse any of the children in the Frisco residence. Thus, the appellants can produce no evidence from which reasonable minds could infer that Choices had a special duty to control the actions of John Doe II and prevent him from harming anyone.
 {¶ 30} The appellants' first assignment of error is overruled.
 IV {¶ 31} The appellants' second and final assignment of error is as follows:
 {¶ 32} "THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEE CHOICES SINCE SAID APPELLEE FAILED IN ITS LEGAL DUTY TO JOHN DOE I."
 {¶ 33} In its final assignment, the appellants contend that summary judgment was improper because Choices owed a duty to the victim since it permitted him to be exposed to John Doe II, whom the agency controlled directly through management of his case. As stated above, Choices was not "in charge" of John Doe II, nor did the agency have direct control of the child. No special relationship existed such that Choices had a special duty to protect third parties from any harm perpetrated by John Doe II. Moreover, Choices did not have a duty to protect the victim because it was not foreseeable to the agency that John Doe II would harm the victim. The appellants fail to cite to any evidence in the record that Choices was aware of any actions on the part of John Doe II that indicate that he was a danger to the children in the Frisco residence. Thus, no genuine issue of material fact exists with respect to the appellants' claims.
 {¶ 34} The appellants' second assignment of error is overruled.
 V {¶ 35} CROSS-APPEAL OF LISA FRISCO
 {¶ 36} Lisa Frisco's sole assignment of error is as follows:
 {¶ 37} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN OVERRULING LISA FRISCO'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM FOR NEGLIGENT SUPERVISION BECAUSE LISA FRISCO DID NOT HAVE THE ABILITY TO CONTROL JOHN DOE II AT THE TIME OF THE SEXUAL EVENT WITH JOHN DOE I."
 {¶ 38} The general rule in Ohio is that an order denying a motion for summary judgment is not a final appealable order.State, ex rel. Overmeyer v. Walinski, Judge (1966),8 Ohio St.2d 23, 222 N.E.2d 312. In the instant case, the trial court sustained Lisa Frisco's motion for summary judgment as it pertained to the appellants' claim against her for negligent infliction of emotional distress. However, the trial court overruled her motion as it pertained to appellants' claim against her for negligent supervision. Thus, that portion of the trial court's ruling is not a final appealable order, and as such, we are without jurisdiction to address Lisa Frisco's argument.
 {¶ 39} Lisa Frisco's sole assignment of error is dismissed.
 VI {¶ 40} The appellants' assignment of error having been overruled, and Lisa Frisco's assignment having been dismissed, the judgment of the trial court is affirmed.
Wolff, J. and Walters, J., concur.
(Hon. Sumner E. Walters retired from the Third District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio).