[Cite as *Okocha v. Valentour Edn. Sys., Inc.*, 2012-Ohio-4625.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

GODSON C. OKOCHA et al.          :

                                   :          Appellate Case No. CA 24982

        Plaintiffs-Appellants          :

                                   :          Trial Court Case No. 2009-CV-2735

v.          :

                                   :

VALENTOUR EDUCATION          :
SYSTEMS,   INC et al.          :          (Civil Appeal from Montgomery
                                   :          County Court of Common Pleas)

        Defendants-Appellees          :

                                   :

. . . . . . . . . . .

O P I N I O N

Rendered on the 5th day of October, 2012.

. . . . . . . . . . .

DURDEN LAW, L.P.A., LLC, and AARON G. DURDEN, Atty. Reg. #0039862, 10 West
Monument Avenue, Dayton, Ohio 45402
        Plaintiffs-Appellants

FREUND, FREEZE & ARNOLD, GORDON D. ARNOLD, Atty. Reg. #0012195, and
PATRICK J. JANIS, Atty. Reg. #0012194, 1 South Main Street, Suite 1800, Dayton, Ohio
45402
        Defendants-Appellees

. . . . . . . . . . . .

FRENCH, J.

    **{¶ 1}**     Plaintiffs-appellants, Godson C. Okocha and Dr. Patricia I. Okocha,

individually and as parents and natural guardians of their three children, Nicholas, Amaka, and Kechi Okocha, appeal the judgment of the Montgomery County Court of Common Pleas, which granted summary judgment in favor of defendants-appellees, Valentour Education Systems, Inc., Centerville Child Development Center ("CCDC"), CCDC Navigators, Performers, Joseph C. Valentour, and Catherine A. Valentour. For the following reasons, we affirm.

## I. BACKGROUND

{¶ 2} Joseph and Catherine Valentour own and operate CCDC, a licensed child care center in Dayton, Ohio, through Valentour Education Systems, Inc. CCDC has several classrooms for children of various ages, including two infant/toddler classrooms, Itty Bitty for ages six weeks to 12 months, and Explorers for ages 9 months to 18 months. The Explorers room is approximately 15 feet by 15 feet square, and includes a kitchen area, a play area, and a crib area. The three areas are separated by half walls, approximately three feet high, that allow the teachers to observe the children at all times from anywhere in the classroom. The play area is covered in thick, padded carpeting.

{¶ 3} On May 16, 2006, CCDC employed Heather Gottlieb as education coordinator, Terri Bogunia as assistant director and preschool teacher, Ashley Biggs as lead teacher in the Explorers room, and Jill Brackman as assistant teacher in the Explorers room. At approximately 9:00 that morning, Dr. Okocha brought her son, Nicholas ("Kenny"), then 10 months old, to the Explorers classroom. When Kenny arrived, Biggs and Gottlieb were in the classroom; Gottlieb was present to conduct a performance appraisal on Biggs. Dr. Okocha

told Biggs that Kenny had not slept well the night before. She asked her to keep an eye on him and to let her know how he was doing. When Dr. Okocha left, Kenny was crying and visibly upset. Biggs comforted Kenny and eventually engaged him in playtime on the floor. At the time, Kenny had not yet learned to walk, and he could stand only if holding onto an object.

{¶ 4} Kenny cried intermittently throughout the day, did not eat his lunch or snacks well, and vomited in the early afternoon. Brackman relieved Biggs as classroom teacher at approximately 3:00 p.m. At that point, there were three children in the Explorers room, all napping in cribs. Following naptime, Brackman sat Kenny upright on the carpeted floor in the play area. She then walked four or five steps to the kitchen area to attend to another child. Seconds later, Brackman heard Kenny crying very loudly and observed him on his back. Brackman immediately picked Kenny up and attempted to console him, but he continued to cry in a manner that concerned Brackman. Bogunia, working at a desk just outside the Explorers classroom, heard Kenny crying and entered the room. Although Kenny eventually quieted down, he was thereafter lethargic, his skin was clammy, and his eyes were open but not focused. Bogunia eventually took Kenny from Brackman and carried him out of the classroom in order to assess his condition more thoroughly.

{¶ 5} At the same time, Mr. Okocha and his daughter, Kechi, arrived at CCDC. Mr. Okocha observed Kenny in Bogunia's arms and noted that his eyes were dilated, his skin was clammy, his body was stiff, and he appeared to be unconscious. Mr. Okocha retrieved Kenny from Bogunia and attempted to revive him by repeatedly calling his name and patting his bottom. Kenny remained unresponsive, and Gottlieb called 911.

{¶6} Paramedics responded to the 911 call within minutes. Although Kenny eventually regained consciousness, the paramedics transported him to a nearby hospital, where he was diagnosed with an acute left frontal temporoparietal subdural hematoma requiring emergency brain surgery. Kenny responded well to the surgery and was discharged from the hospital after a few days. Following physical therapy, Kenny recovered fully.

{¶ 7} As a result of the events of May 16, 2006, appellants filed an 11-count complaint against appellees asserting causes of action for common law negligence, negligence pursuant to R.C. Chapter 5104 and Ohio Adm.Code 5101:2-12, assault and battery, loss of consortium, child endangerment, negligent infliction of emotional distress, intentional infliction of emotional distress, negligent hiring, retention and supervision, res ipsa loquitur, respondeat superior, and punitive damages and attorney fees. Appellees moved for summary judgment on each of appellants' claims. On December 28, 2011, the trial court granted appellees' motion.

## II. ASSIGNMENTS OF ERROR

{¶ 8} Appellants now appeal, assigning the following errors:

[I.] THE TRIAL COURT ERRED IN FINDING THAT DEFENDANTS WERE ENTITLED TO SUMMARY JUDGMENT ON COUNT 1, THE CLAIM OF COMMON LAW NEGLIGENCE AND COUNT 2, NEGLIGENCE UNDER THE DAY CARE REGULATIONS OF THE OHIO ADMINISTRATIVE CODE.

[II.] THE TRIAL COURT ERRED IN FINDING THAT DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT 9 AS THE DOCTRINE OF *RES IPSA LOQUITUR* APPLIES TO THE INJURIES SUFFERED BY APPELLANT.

## III. DISCUSSION

{¶ 9} We will address appellants' assignments of error together, as both contend the trial court erred by granting summary judgment in favor of appellees. We review a summary judgment de novo by independently reviewing the judgment, without deference to the trial court's determination. *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588, 641 N.E.2d 265 (8th Dist.1994), citing *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993). We apply the same standard as the trial court and must affirm the judgment if any grounds the movant raised in the trial court support it. *Coventry Twp. v. Ecker,* 101 Ohio App.3d 38, 41-42, 654 N.E.2d 1327 (9th Dist.1995).

{¶10} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary

judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party. *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978). Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the non-moving party. *Murphy v. Reynoldsburg,* 65 Ohio St.3d 356, 358-59, 604 N.E.2d 138 (1992), quoting *Norris v. Ohio Std. Oil Co.,* 70 Ohio St.2d 1, 2, 433 N.E.2d 615 (1982).

**{¶11}** When a party moves for summary judgment on the ground that the non-moving party cannot prove its case, the movant bears the initial responsibility of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claim. *Dresher v. Burt,* 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). If the moving party meets its initial burden, the non-movant must set forth specific facts demonstrating a genuine issue for trial. *Id.* at 293.

**{¶12}** In the first assignment of error, appellants contend that the trial court erred in granting summary judgment in favor of appellees on appellants' claims for common law negligence and negligence under R.C. Chapter 5104 and Ohio Adm.Code 5101:2-12. Appellants assert appellees breached duties to provide for Kenny's health and safety under both common law negligence principles and Ohio Adm.Code 5101:2-12-21(A), and that such breach proximately caused his injuries. More

particularly, appellants contend that appellees breached the duties owed Kenny by allowing him to fall while at the child care center and that his fall proximately caused his subdural hematoma.

**{¶13}** To establish a cause of action for negligence, the plaintiff must demonstrate the existence of a duty on the part of the defendant, breach of that duty, and an injury proximately resulting from the breach. *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.,* 81 Ohio St.3d 677, 680693 N.E.2d 271 (1998). To defeat a properly supported motion for summary judgment in a negligence action, the plaintiff must first demonstrate a duty owed by the defendant. *Doe v. Choices*, 2d Dist. Montgomery No. 21350, 2006-Ohio-5757, ¶ 24. The plaintiff must then present evidence from which reasonable minds could conclude that the defendant breached that duty and that the breach was the proximate cause of the plaintiff's injuries. *Id*. *See also Keister v. Park Centre Lanes*, 3 Ohio App.3d 19, 443 N.E.2d 532 (5th Dist.1981), syllabus. Ohio Adm.Code 5101:2-12-21(A) provides that licensed child care center "[s]taff shall be responsible for the well being and safety of each child in the group to which they are assigned and meeting each child's basic needs."

**{¶14}** Here, appellants submitted no evidence establishing that appellees breached any duty owed Kenny under either common law negligence principles or Ohio Adm.Code 5101:2-12-21(A). In their motion for summary judgment, appellees established that CCDC complied with all standards governing the operation of a licensed child care center set forth by the Ohio Department of Job and Family Services ("ODJFS"). Kenny's teachers, Biggs and Brackman, met all qualifications and

standards established by ODJFS and, thus, were appropriate persons to supervise the activities in the Explorers classroom. At the time of the incident, Brackman was supervising only three children. The ratio of children to daycare worker was thus 3:1, well within the 5:1 standard set forth by ODJFS. *See* Ohio Adm.Code 5101-2-12-20(C).

{¶15} Appellees further established that at the time of the incident, Kenny was seated on a well-cushioned, carpeted floor within a few steps of Brackman. Brackman immediately attended to Kenny upon hearing him cry, and other daycare personnel reacted quickly and appropriately in assessing Kenny's condition. No evidence establishes that Kenny fell or was struck or pushed by another child. Moreover, even if such an event had occurred, " '[s]upervisors of a day nursery are charged with the highest degree of care toward the children placed in their custody * * * [but] are nevertheless not the absolute insurers of their safety and cannot be expected or required to prevent children from falling or striking each other during the course of normal childhood play.' " *Strozier v. Aurora Child Dev. Ctr.*, 6th Dist. Lucas No. L-10-1324, 2011-Ohio-2076, ¶ 12, quoting *Oldham v. Hoover,* 140 So.2d 417, 421 (La.1962).

{¶16} Accordingly, because appellants failed to present any evidence to demonstrate a genuine issue of material fact regarding violation of any duty under either the common law or the Ohio Administrative Code, the trial court properly granted summary judgment on appellants' negligence claim. We overrule appellants' first assignment of error.

{¶17} In their second assignment of error, appellants contend that the trial court erroneously failed to apply the doctrine of res ipsa

loquitur when analyzing appellees' motion for summary judgment. We disagree, as we find that the doctrine does not apply in this case.

{¶18} The doctrine of res ipsa loquitur is a rule of evidence that permits, but does not require, a fact finder to draw an inference of negligence from circumstantial evidence. *Moore v. Grismer Tire Co*., 2d Dist. Miami No. 2011-CA-31, 2012-Ohio-1775, ¶ 12, citing *Hunter v. Children's Med. Ctr.*, 2d Dist. Montgomery No. 17103, 1998 WL 879138 (Dec. 18, 1998). To warrant application of the doctrine, a plaintiff must offer evidence in support of the following two conclusions: (1) the instrumentality causing the injury was under the exclusive control of the defendant at the time of the injury or the creation of the condition causing the injury; and (2) the injury occurred under such circumstances that in the ordinary course of events it could only have occurred in the absence of ordinary care. *Moore* at ¶ 12.

{¶19} The trial court properly declined to apply the res ipsa loquitur doctrine to this case as appellants failed to establish that the instrumentality purported to have caused Kenny's subdural hematoma was in appellees' exclusive control. Appellants' expert, Dr. Ralph A. Hicks, testified that "the general time line that most people use [in medical literature] for classifying subdural hematomas as acute * * * is one that occurs within 72 hours of a precipitating event." Dr. Hicks deposition 17 (hereinafter "Dr. Hicks Depo. __"). He further averred that defining "acute" was not an "exact science," and that he typically defined " 'acute' " to mean, "within recent days, although even within a couple of days, a day or two." Dr. Hicks Depo. 17.

{¶20} Dr. Hicks also testified that Kenny

suffered a midline brain shift caused, in part, by swelling of the brain, and the shift could take place "from minutes to over a period of a couple of days or so" after an injury. Dr. Hicks Depo. 26. He further averred that "given the acute nature of the subdural blood and * * * midline shift[, that] suggests it was a recent bleed," which "could be hours to a day or two or more, depending upon symptoms and time line." Dr. Hicks Depo. 49-50. Dr. Hicks further averred that he could not determine the "precise mechanism of injury" by examining Kenny's CT scan, MRI or lab tests and that he "could not precisely say when [the subdural hematoma] happened." Dr. Hicks Depo. 27, 28.

{¶21} In their reply brief, appellants contend certain testimony offered by Dr. Hicks establishes at least a genuine issue of material fact regarding whether Kenny was under appellees' exclusive control when the subdural hematoma began. When asked if he had arrived at an opinion as to when the subdural hematoma started, Dr. Hicks opined that "given the nature * * * of the subdural hematoma, * * * the child would have been symptomatic very soon after it started, and so I don't believe that he would have been acting totally normal for any significant period of time, and so I think it most likely would have occurred -- I think the best way to time it would be by identifying a time when the child was last acting normal in all ways." Dr. Hicks Depo. 50. Dr. Hicks testified that, given Dr. Okocha's statement to him that on the morning of May 16, 2006, Kenny "looked well, he nursed, was playing, laughing, took a bath, acted his usual self, playing with toys, that, to me, would suggest that * * * whatever occurred would have occurred at some point after that most likely." Dr. Hicks Depo. 51. However, Dr. Hicks admitted that Dr. Okocha's reported concern about Kenny not sleeping well the night before the incident and

asking CCDC personnel to watch him closely meant that Kenny was not acting normally and was consistent with Kenny "having some type of symptom" of the subdural hematoma prior to his attendance at CCDC. Dr. Hicks Depo. 57. Dr. Hicks ultimately admitted that he had no way of "determining when the subdural hematoma started." Dr. Hicks Depo. 51.

**{¶22}** Dr. Hicks' testimony does not link the time of Kenny's subdural hematoma to the seven hours he attended CCDC on May 16, 2006. Appellants' own evidence thus establishes that it was just as likely the event precipitating the subdural hematoma occurred while Kenny was away from CCDC. Because appellants failed to establish that the instrumentality purported to have caused the injury was in the exclusive control of appellees, res ipsa loquitur is inapplicable here, and we need not consider whether the injury could only have occurred in the absence of ordinary care. Accordingly, having discerned no error in the trial court's rejection of appellants' attempt to invoke the doctrine of res ipsa loquitur, we overrule appellants' second assignment of error.

## IV. CONCLUSION

**{¶23}** Having overruled appellants' first and second assignments of error, we affirm the judgment of the Montgomery County Court of Common Pleas.

. . . . . . . . . . . .

FAIN, concurs.

FROELICH, J., concurring in judgment:

**{¶24}** This was a potentially tragic incident

from which the young child fortunately has recovered fully. I disagree with the majority that the instrumentality causing the injury was not under the exclusive control of the defendant. However, contrary to the Appellees, the Appellants offered no evidence that the injury could only have occurred in the absence of ordinary care; thus, the trial court did not err in not applying the doctrine of res ipsa loquitur.

. . . . . . . . . . . . .

(Hon. Judith L. French, Tenth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)

Copies mailed to:

Aaron G. Durden
Gordon D. Arnold
Patrick J. Janis
The Honorable Barbara P. Gorman